Dils v. Bank of Pikeville.

---

CASE 109—ACTION UPON A PROMISSORY NOTE.—FEB. 8.

# Dils v. Bank of Pikeville.

| 109   757
|f133   335

### APPEAL FROM PIKE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AGAINST ANN DILS AND SHE APPEALS.   AF-
FIRMED.

PLEADING—AVERMENT UPON INFORMATION AND BELIEF—ESCROW—DE-
LIVERY OF NOTE TO BANK OFFICER—BREACH OF AGREEMENT TO
PRODUCE ADDITIONAL ENDORSER.

Held:   1. An averment by defendant upon information and belief that a certain contract was made shows conclusively that defendant was not a party to the contract, as he was bound to have personal knowledge of the contract if such had been the fact.

2. Accommodation indorsers of a note made payable to themselves. can not escape liability to plaintiff bank on the ground that the note was delivered by them to the vice president and general manager of the bank upon the faith of his agreement that the note was not to be accepted or discounted by him for the bank until it had been indorsed by another person,, as the bank is to be regarded as the payee, and a note can not be delivered.

to the payee as an escrow; but defendant may, by counterclaim, recover damages for breach of the agreement.

WALTER S. HARKINS, FOR APPELLANT.

O. C. Bowles applied to John W. Ford and this appellant to endorse a note for him for $1,550 with which to renew a note maturing in the Bank of Pikeville. This they agreed to do upon the condition that said Bowles would have his son, John C. Bowles, to endorse the note with the other endorsers. This fact was known to the acting cashier and manager of the bank, Mr. James Sowards, who was informed at the time said note was drawn up and signed that he was not to accept it, or discount it until that condition was complied with, and the note was left with O. C. Bowles for that purpose; but the Bank of Pikeville, disregarding this notification and request, took said note and cancelled the other one, and the appellant and Ford were not aware that the condition had not been complied with until they were called on to pay the note at maturity.

Suit was instituted thereon and appellant, Mrs. Dils, filed an answer setting up the facts above stated as her defense. To this answer the court sustained a demurrer and rendered a judgment against her for the full amount of said note.

It is an elementary proposition that I need not discuss, that the delivery of a note by the makers and endorsers is essential to bind either, and where a condition is imposed, no delivery of the bill, until the conditions complied with, will bind the in-dorsers; and especially is this true where a knowledge and a notice not to accept it, unless the condition is complied with, is brought home to the payee, as in this case.

### AUTHORITIES CITED.

Daniels on Negotiable Instruments, p. 86, secs. 65 and 67; Jackson v. Cooper, 19 Ky. Law Rep., p. 9; Daniel on Negotiable Instruments, sec. 854; Smith v. Moberly & C., 10 B. Monroe, pp. 266 and 268; Millett v. Parker, 2 Met., p. 609; Garvin & Co. v. Mobley, &c., 1 Bush, p. 52; Burke v. Dulaney, 153 U. S. Rep., p. 237; Benton v. Martin, 52 N. Y., pp. 570 and 574; Perry v. Patterson, 42 Am. Dec., p. 424.

SAMUEL J. SALYER, ATTORNEY FOR APPELLEE.

The note sued on reads at follows:
"$1,550.                    PIKEVILLE, KY., Dec. 24, 1895.
"Four months after date I promise to pay to the order of John W. Ford and Ann Dils fifteen hundred and fifty dollars at Bank of Pikeville, Ky., value received.                    O. C. BOWLES."

Dils v. Bank of Pikeville.

This note was endorsed by Ann Dils and J. W. Ford as, and for an accommodation for, the maker, O. C. Bowles.

A demurrer was properly sustained to the answer and amended answer of Dils because it nowhere appears in her answer, who wrote the note sued on, who inserted the names in the face of the note or at whose request same was done, or whether or not she endorsed it in blank, that is with no name or names in the face thereof, whether or not she endorsed it first, whether or not she was induced to endorse it because Ford had previously endorsed it, or whether or not she endorsed it because of any representations made to her by any person, either the maker Bowles or Bank of Pikeville, or any person whatsoever, or whether she and Ford had previously, or at any time, agreed to endorse it and become jointly bound thereon with any other person whatsoever.

The only attempted allegation is:  That at the time she endorsed it she then believed that her co-defendant, John W. Ford, was jointly liable for the amount thereof.   And she then goes on to say that "she is informed and charges to be true," as to what occurred at the time Ford endorsed the note between the maker, Bowles, and Ford and Sowards, vice-president of the bank, and that said Ford relied upon said agreement being carried out, etc.

To this plea we contend the demurrer was properly sustained.

### AUTHORITIES CITED.

Cartwell v. The John Williamson Co., 10 Ky. Law Rep., 1062; Scott v. Doneghy, 17 B. Monroe, 324, 325; Moody v. Findley, 43 Ala., 167; Clapp v. Rice, 13 Gray, 403; 74 Am. Dec., 639; Easterly v. Barber, 66 N. Y., 433; Shaw v. Knox, 98 Mass., 214; Kerschner v. Conklin, 40 Conn., 77.

EDWARD W. HINES, FOR APPELLANT.

Appellant seeks to be released as indorser on the note sued on, upon the ground that her co-endorser, John W. Ford, is not bound because he endorsed the note upon condition that John C. Bowles was also to become endorser, which he failed to do. She fails to allege that she endorsed the note on such condition or upon the condition that John W. Ford was to endorse it.   Nor does she allege that John W. Ford had endorsed it before she did.   Her name appears first on the back of the note and the presumption is she endorsed first, especially as she does not allege that J. W. Ford's name appeared on the note when she endorsed it.

OPINION OF THE COURT BY JUDGE DuRELLE—AFFIRMING.

The appellee bank brought suit against appellant, Ann
Dils, and J. W. Ford upon a note for $1,550, signed by
O. C. Bowles, payable to the order of John W. Ford and
Ann Dils, and by them indorsed. A demurrer to the sep-
arate answer of Mrs. Dils was sustained, and the only
question presented in argument is as to the sufficiency
as a defense of the following averment: ".  .  .  That at
the time she indorsed said note she then believed that her
co-defendant, John W. Ford, was jointly liable for the
amount thereof, and that nothing had been done or would
be suffered to be done by the plaintiff, its officer or agent,
whereby the liabilities of said Ford as accommodation in-
dorser would be diminished. She now says that she is
informed, believes, and charges to be true at the time
he, the said John W. Ford, indorsed said note, and before
the same was discounted to or by the Bank of Pikeville,
it was understood and agreed by and between this de-
fendant, O. C. Bowles, and the officer of the bank, Jas.
Sowards, vice president and general manager, with whom
the negotiations of the sale of said note to said bank was
being negotiated, that John C. Bowles, a son of the maker,
who was then and is now a man of considerable property,
was also to be made and named as a payee in said note,
and was to indorse said note with these defendants, and
it was so understood and agreed by and between the par-
ties above that said note was not to be accepted or dis-
counted by said James Sowards for said Bank of Pike-
ville until the same had been indorsed by said John C.
Bowles as payee and as aforesaid; that said defendant
Ford relied upon said agreement being carried out, and
believed that the same had been done, and was not ad-
vised, nor did not know, that said note had not been made

payable to the order of said John C. Bowles, and indorsed
by him, until the maturity of said note; that in violation
of said agreement and contract the said James Sowards,
vice president and general manager of the Bank of Pike-
ville, without the knowledge or consent of these defend-
ants, or either of them, against their will or consent, dis-
counted said note for O. C. Bowles without the said John
C. Bowles having indorsed the same as one of the payees
or otherwise; that by reason of the liabilities on said note,
these defendants, by reason thereof, their liabilities was
and is increased, and she is released from any and all
liability thereon because thereof." Clearly, this is an aver-
ment of an agreement made by the bank with her co-de-
fendant. It can not be that it was an agreement made
with her, for she avers it upon information and belief,
which is not a good averment of a contract to which she
was a party, and of which she was bound to have personal
knowledge. But whether it was intended as a statement
of an agreement with her, or only with her co-indorser,
makes little difference. The intention of the averment is
to rely upon matter alleged as operating to release her
co-defendant from liability upon the note. Whether the
pleading is sufficient to show that Ford's release would
operate to release Mrs. Dils is not material, for the aver-
ments as to Ford do not show a state of facts which he
could plead as matters of defense to this action. The
legal relations of these co-indorsers are exactly those of
co-sureties. Daniel, Neg. Inst. (4th Ed.), section 1303.
From the record it appears that they indorsed the paper,
and delivered it to the bank; that is to say, they deliv-
ered it to the bank, the indorsee, which thereby became
the payee upon that payee's agreement with Ford that
it would secure an additional name as co-indorser with

them. This is not the case of a delivery in escrow by sureties to the principal obligor upon his representation that he would secure the signature of additional sureties. It may be freely conceded that in such case the liability of the sureties would depend upon the knowledge which the obligee had of the conditions upon which the delivery in escrow was made. If the payee or obligee had notice of such conditions or agreements, the fact of the agreement and the knowledge thereof on the part of the obligee or payee would constitute, under the decisions of this court, a valid defense, whether such knowledge was the result of direct notice of the agreement or was imputed to the obligee from matter appearing upon the face of the paper of which he was bound to take notice. But in this case there was no delivery in escrow upon condition, nor could there be, for an obligation can not be delivered in escrow to the obligee himself. And when the obligation was delivered to the payee a contemporaneous condition in parol could not operate to vary the terms of the written contract, though it might be available upon proper allegations of facts showing damage as a basis for a counterclaim. Daniel, Neg. Inst. (4th Ed.), section 159.

This question was decided in Hubble v. Murphy, 62 Ky., 280. After distinguishing the cases of Smith v. Moberly, 10 B. Mon., 266, and Jones v. Insurance Co., 1 Metc., 58, in which it was held that "a payee will not be permitted to defraud a surety by receiving a note from a principal with notice that he has no authority to deliver it," this court, in an opinion by Chief Justice Bullitt, said: "But in the case under consideration the note, according to the statements of the answer, was delivered by the surety to the payee upon the payee's agreeing to obtain the signature of another person thereto. Whether or not the

plaintiff's failure to obtain Goode's signature would have
entitled the defendant to recover damages upon a coun-
ter claim with proper averments, we need not decide be-
cause the defendant does not allege that he sustained any
damage by reason of said failure.  He pleads said failure
merely as a defense to the action.  The only ground of
defense which the answer can possibly be regarded as de-
signed to present is, either that the plaintiff agreed that
the note should not be obligatory on the defendant unless
Goode's signature should be procured, or that the note
was delivered to the plaintiff on condition that it should
not be obligatory on the defendant unless said signature
should be procured.  The answer, as copied in the record,
does not expressly aver such an agreement or such a condi-
tion. But, if such an agreement or condition could be implied
from its statements, still it presents no defense; because
such an agreement by parol, being contradictory of the
writing, could not destroy its obligation, and such a con-
dition would be void, because a note or bond can not be
delivered to the payee or obligor as an escrow.  Bad-
cock v. Steadman, 1 Root, 87; Moss v. Riddle, 5 Cranch,
351; (3 L. Ed., 123.")  In Murphy v. Hubble, 63 Ky., 249,
upon the second appeal of the same case, it appeared that
an amended answer and counterclaim had been filed, seek-
ing damages for a breach of agreement by the payee to
procure the signature of another as co-surety.  The case
was decided upon demurrer to the counterclaim.  In the
opinion by Chief Justice Marshall it was said: "But, al-
though it has been decided in numerous cases, and in this
case when formerly here, that the obligatory effect of a
note or bond can not be destroyed (nor impaired) by a
contemporaneous parol agreement between obligor and
obligee relating to and purporting to restrain its obli-

gation, and that such note or bond delivered by the obligor to the obligee can not be made an escrow by a parol agreement between them made at the time of the delivery that it shall not be obligatory unless some specified act be done by the obligee, it does not follow that such an agreement, and especially if it comprise an undertaking by the obligee to procure another surety, must, because it is ineffectual for certain purposes, and even for that for which it appears to have been primarily designed, therefore be deemed utterly invalid and ineffectual for all purposes. The law will not enforce such an agreement for the attainment of its direct and immediate or expressed object of changing the terms or legal effect of a written instrument which is the act and deed of the party who seeks enforcement, or of defeating the legal effect of the delivery, by which, according to law, it has become his act and deed. The agreement, therefore, can not be specifically enforced upon or against the instrument to which it relates, and which remains obligatory, notwithstanding the agreement. But, although to this extent unenforceable, it is not prohibited by law. It is not illegal, but merely insufficient in its form to operate coercively in the particular manner designated; and the obligee in the bond might observe and give effect to it without any violation of the law or public policy. If such an agreement be founded upon a legal and sufficient consideration—for instance, if it be made as the inducement to one of the parties to become bound to the other as surety for his debtor (a third person) in a new obligation, whereby his responsibility is created or prolonged—and if actual damage accrue to the party thus induced in consequence of the failure of the creditor to perform his part of the agreement by procuring the additional surety, we do not perceive or admit that the in-

competency of the agreement to impair the force of
the instrument executed by the surety should de-
prive him of all remedy for redress of the injury
he sustains by the nonperformance of the obligee's under-
taking, by the performance of which the responsibility
upon the note would have been divided between two, and
his own loss would have been reduced one-half." So, in
Gaar v. Banking Co., 74 Ky., 188, the same question was
decided in an elaborate opinion by Judge Cofer· "It was
averred in the second amendment offered and rejected
that it was agreed between the appellants and the bank
that, before the bill should become obligatory upon them,
all the indorsers and the drawer and acceptors should
sign the agreement indorsed on the bill, and thus be-
come bound as between themselves, as if they were joint
sureties on a promissory note; and that the bank had
failed to secure the signature of Kelsey to that agreement.
These facts constituted no defense to the action on the
bill. Hubble v. Murphy, 62 Ky., 278. It is not alleged in
those amendments that Kelsey was solvent either at the
date of maturity of the bill or at the time of tendering the
answer; and conceding, as we are inclined to do, that, if
Kelsey had been alleged to be solvent, the breach of such
an agreement would have given the appellants a cause
of action against the bank which might have been made
available as a counterclaim, we think the court properly
rejected the amendment, because, unless Kelsey was sol-
vent, no injury resulted to the appellants from the failure
of the bank to obtain his signature to the agreement."
We have found no case in conflict with the doctrine laid
down in the cases cited. From these decisions it follows
necessarily that, whatever might have been Ford's right
of recovery upon a counterclaim against the bank, the

averments as to him in appellant's answer constitute no defense to an action against him, and consequently none to the action against her. Nor, it would seem, would the successful prosecution of such counterclaim by Ford deprive Mrs. Dils of her right of contribution against him. Perceiving no error in the judgment appealed from, the same is affirmed.