Affirming.
Appellee, A.M. Anderson, as Receiver for the Citizen's National Bank of Richmond, Kentucky, brought this suit in the Madison circuit court in May, 1937, to recover of appellant on a note for $2,000 executed by J.D. Goodloe, now deceased, as principal, with appellant as surety. The note was subject to a credit of $742.79 paid out of the proceeds of the personal property of J.D. Goodloe, deceased, upon the settlement of his personal estate. *Page 462 
Appellant filed his answer and counterclaim admitting the execution of the note as surety for J.D. Goodloe but pleaded as a defense to appellee's right of recovery, that prior to the execution of the note by his brother, J.D. Goodloe, he and J.D. Goodboe were carrying their separate bank accounts with the Madison Southern National Bank and Trust Company of Richmond, and about a year prior to the execution of the original note herein sued on, same having been executed in the year 1928, and while J.D. Goodloe was doing business with the Madison Southern National Bank, appellant signed and executed a note as surety for J.D. Goodloe to the Madison Southern National Bank in the sum of $2,950, which was subject to certain credits reducing same to the sum of approximately $2,500 when the estate of J.D. Goodloe, deceased, was settled; that the note sued on is a renewal note and that some time before the execution of the original note in 1928, J.D. Goodloe desired to transfer his banking business from the Madison Southern National Bank 
Trust Company to the Citizens National Bank, appellee, but before making the transfer of his banking business to the appellee, it, appellee, required J.D. Goodloe to pay any indebtedness he then owed to the Madison Southern National Bank, and in order to enable J.D. Goodloe to make the desired change in his banking affairs, appellant paid the $2,500 note which J.D. Goodloe owed the Madison Southern National Bank and on which appellant was surety, all of which was at the request and with the knowledge of appellee and immediately upon the payment of the note he notified appellee and its officials that he had paid the note and that J.D. Goodloe was then indebted to him in the sum of that note; that at the time he paid the note to the Madison Southern National Bank, J.D. Goodloe then owned real estate situated in Madison County, Kentucky, worth the sum of $30,000, subject to a Federal Land Bank mortgage of about $20,000, and his land was well worth over the existing liabilities of J.D. Goodloe at that time; that soon after J.D. Goodloe transferred his business from the Madison Southern National Bank to appellee, he, J.D. Goodloe, was desirous of obtaining a loan of $2,000 from appellee and appellee informed appellant that it would loan J.D. Goodloe the sum of $2,000 if appellant would sign the note as surety; that he conversed with the officials of appellee bank concerning priority of the balance *Page 463 
of $2,500, owed him by J.D. Goodloe which appellant paid to the Madison Southern National Bank, and it was agreed between him and the officials of appellee at that time that in the event appellant signed the $2,000 note as surety for J.D. Goodloe, that appellant was to have a prior claim to appellee upon the real and personal estate of J.D. Goodloe for said sums and that as result of this agreement and relying upon the statements of the agents and officials of appellee he was induced and persuaded to sign as surety the $2,000 note sued on.
He further stated that shortly after he signed the $2,000 note as surety, in violation of the agreements and understanding he had with the officials and agents of appellee as stated above, appellee by its officials and agents, against the will and without the consent and knowledge of appellant and for the purpose of cheating and defrauding him, did wrongfully, fraudulently and secretly from time to time loan J.D. Goodloe various sums of money aggregating the sum of $9,047.48 and to secure the payment of which it procured J.D. Goodloe to execute to it a second mortgage upon his farm in Madison county, which farm at that time had a Federal Land Bank mortgage against it in the sum stated above; that appellee, contrary to its agreement and understanding with him, failed to protect him in any way or manner by failing to incorporate in said mortgage the amount owing this defendant by J.D. Goodloe or the $2,000 note which be signed as surety.
Appellant further stated in his answer that thereafter and on the 9th day of June, 1932, J.D. Goodloe died intestate and that at the time of his death his estate was solvent and sufficient to pay any and all of his liabilities; that shortly before the death of J.D. Goodloe and soon as appellant learned or was informed of the execution of the second mortgage to appellee, he immediately notified appellee that he would not further renew the $2,000 note or be responsible for same because of the violation of the agreement and understanding above set forth, and further notified appellee to immediately proceed against the property and estate of J.D. Goodloe, who was then living, for the collection of any demands which it had against J.D. Goodloe and especially upon the $2,000 note; that appellee failed and refused to take any action in the collection of its demands during the lifetime of J.D. Goodloe, and had it not been for its *Page 464 
negligence in failing to collect its obligations against J.D. Goodloe out of his property during his lifetime, it would have collected the whole of its obligations including the $2,000 note signed by him as surety. He further stated that immediately after the death of J.D. Goodloe an action in equity (referred to in the record in the present action as action No. 2758) was filed in the Madison circuit court to settle the estate of J.D. Goodloe and while the settlement suit was pending, he, appellant, went to the appellee and offered to its officials and agents to bid the amount of the Federal Land Bank mortgage and note, the balance of the Madison Southern National Bank note paid by appellant for J.D. Goodloe, and the $2,000 note he had signed as surety, and take the real estate of J.D. Goodloe, deceased, in satisfaction of said sums; that at that time J.D. Goodloe's real estate was advertised for sale in satisfaction of the Federal Land Bank note; that appellee refused his offer and thereafter at the time of the sale appellant together with the various other citizens of Madison county attended the sale and C.C. Wallace, who was attorney for appellee at that time, bid off said real estate of J.D. Goodloe, deceased, for the sum of the Federal Land Bank mortgage, plus $1, which was far less than the value of said land, and that the presence of Wallace, who was attorney for appellee, and bidding at said sale caused any bids that might have been made from being made and as result thereof the sale was closed by C.C. Wallace, all of which was done secretly and fraudulently and for the purpose of cheating and defrauding the estate of J.D. Goodloe and especially the appellant.
In paragraph 3 of the answer appellant pleaded the statute of limitations against appellee's action on the note. But since other facts pleaded by appellant and undisputably disclosed by the record in action No. 2758, the suit to settle the estate of J.D. Goodloe, clearly disclose that appellee's right of action was not barred by the statute of limitations, we need not further pursue that question, except we may say, however, that the renewal note sued on was executed November 30, 1931, and this suit was filed on the 13th day of May, 1937, which brings it within the seven year period of limitations prescribed by Section 2551 of Kentucky Statutes.
In regard to appellant's allegation in his answer, that he notified appellee that he would not further renew the note sued on, or be responsible for the same because *Page 465 
of the violation of the alleged agreement and, asking appellee to proceed against the estate of J.D. Goodloe in his lifetime, it is sufficient to say that he does not allege that said notice was in writing as required by Section 4668, Kentucky Statutes. This being true, the alleged notice does not afford appellant any grounds of defense.
In appellant's answer and counterclaim he consistently referred to action No. 2758, the action for the settlement of the estate of J.D. Goodloe, deceased, and made that record a part of his answer and which is also made a part of this record on appeal. The settlement suit record contradicts many of the material allegations of appellant's answer, some of which we may mention but it is not necessary to discuss all of them. One vital variance is that it is disclosed in the settlement record No. 2758, that the second mortgage lien taken by appellee to secure it for the alleged additional loans made to J.D. Goodloe was executed in 1928, whereas the $2,000 renewal note in question was executed November 30, 1931.
It is thus seen that the second mortgage could not have prejudiced or affected appellant's rights. Furthermore, it is disclosed in the settlement suit referred to as action No. 2758, that the land of J.D. Goodloe, deceased, was duly advertised and sold by the court's commissioner and produced a sum sufficient only to satisfy the first mortgage lien of the Federal Land Bank. Obviously, if there had been no second mortgage on the land, appellant would have been in no better position than he was with a second mortgage.
In appellant's answer he attacks the sale of the land as being fraudulent, but his allegations of fraud and unfair sale are contradicted by the record in the settlement suit, in that, it is shown by that record that appellant was a party defendant in that action and made no objections to the confirmation of the sale which he now attacks as fraudulent. As a common creditor he received the sum of $908.92 on the $2,500 note he paid to the Madison Southern National Bank for J.D. Goodloe, and also received his pro rata share on the distribution of $5,535.37, realized from the sale of J.D. Goodloe's personal property, and made no complaint or objections concerning the appellee receiving its pro rata of $742.79 on the $2,000 note in controversy, and allowed the settlement and distribution of the proceeds of personal estate *Page 466 
to be confirmed without objections. And he was not only a party to that action in his individual capacity but also appeared of record in a representative capacity as committee for his incompetent ward, Sarah Goodloe, the daughter of J.D. Goodloe, deceased, and in that capacity after the sale of the land had been made and reported, he, as committee for Sarah Goodloe, filed an intervening petition in behalf of his ward in which he stated that he had carefully examined the pleadings, exhibits, orders and judgment of the court in the action and the report of sale made by the master commissioner and that he "has no objections to offer thereto and hereby adopts and confirms and ratifies the same," and prayed that the report of sale made by the master commissioner be confirmed.
Appellant makes his answer a counter-claim in which he seeks to recover damages against appellee for the alleged breach of its agreement with him and its failure to proceed against the estate of J.D. Goodloe in his lifetime, pursuant to the alleged notice we have discussed above. In brief for appellant it is virtually conceded that the alleged oral agreement he had with appellee is not binding, in that, it would have the effect of changing a written contract (note) and that he is liable on the note; but he insists that he is entitled to recover of appellee damages for the alleged breach. To sustain his position he cites and relies upon the cases of Rohrman v. Bonser, 157 Ky. 397, 163 S.W. 193; Gaarr v. Louisville Banking Company, 11 Bush 180, 21 Am. Rep. 209; Hudspeth's Adm'r v. Tyler, 108 Ky. 520, 56 S.W. 973, 22 Ky. Law Rep. 221. He also insists in his counterclaim that he is entitled to recover of appellee the sum of $742.79 pro rated to appellee out of the proceeds of the personal property, claiming that because of the alleged agreement he had with appellee he was entitled to priority against the personal estate of J.D. Goodloe, deceased, as well as the land. Without further discussing the counter-claim, it is sufficient to say that the same reasons and principles stated above relating to appellant's answer and defense to the note are likewise applicable to his counter-claim. The answer and counterclaim are based upon practically the same facts and circumstances and are so intermingled as to render them impossible of separation. The facts disclosed in the record referred to as the settlement suit or action No. 2758 have the same application to the counter-claim as *Page 467 
they have to the answer or defense to appellee's right of recovery on the note. The settlement suit, action No. 2758, was made part of appellant's answer and counterclaim and filed as an exhibit and must be considered in connection with the answer and counter-claim as though copied in full therein. It is the rule that when an exhibit contradicts a pleading the former is controlling. This rule is too well-known to hardly require citation of authority, but we may cite the cases of Blythe v. Warner, 190 Ky. 104, 226 S.W. 669; Samuels v. Weikel, 195 Ky. 552, 242 S.W. 836; Lockhart v. Kentland Coal Coke Company,182 Ky. 673, 207 S.W. 18.
There is no escape from the conclusion that, in view of the facts disclosed by appellant's exhibit, settlement action No. 2758, and appellant having been a party to that action and his acquiescence and express approval of the manner of sale and the distribution of the proceeds thereof, he is now precluded from any recovery on his alleged counter-claim. If the matters complained of in his counter-claim, as well as his answer, were true, appellant should have raised those objections and questions before the confirmation of the sale instead of approving and acquiescing therein in the manner stated above. These matters of estoppel plainly appear on the face of the pleadings and in these circumstances a demurrer was the proper proceeding, and estoppel need not be especially pleaded. Lockhart v. Kentland Coal Coke Company, supra.
For reasons stated it follows that the chancellor did not err in sustaining the demurrer.
Judgment affirmed.