## O'Mara et ux. v. Town of Mt. Vernon.

Feb. 13, 1945.

Wm. Lewis & Son, J. J. Felton and J. W. Lambert for appellants.
Fritz Krueger for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

Appellants and 18 other property owners of the town were defendants to a suit seeking to recover for improvements of streets abutting their respective properties. The two named are appealing from a judgment declaring liens and directing sale in satisfaction. Separate petitions were filed, though the cases were consolidated and heard by a special judge. The first ground for reversal is that the chancellor should have sustained demurrer to the petition because the ordinances exhibited showed that they were irregular, and insufficient to fasten a charge against the property of appellants, and contradicted the petition.

It is contended that the petition on its face is so defective as to make it fall before a demurrer. Our examination leads to the conclusion that the court properly overruled appellant's demurrer, unless the technical grounds relied upon would justify a contrary ruling. The petition set out that the town had duly passed ordinance No. 179 providing for the improvement of side streets, which were in urgent need of resurfacing. The ordinance directed the clerk and chairman of the Board to advertise for bids for the completion of the work on West Main Street (begun but abandoned by W. P. A.), and "resurfacing all the side streets of the town."

It was alleged that due advertisement had been made and that Hubert Johns had the lowest bid. This ordinance was passed on April 2, 1941, and it may be that, standing alone, it was insufficient to fasten a charge or create a lien upon property of the abutting owners. How-

ever, on the 10th day of April the trustees passed ordinance No. 180, which recited that due advertisements for bids for resurfacing all the side streets had been made. The trustees ordained that the contract be and it was let to the successful bidder for repair work on streets specifically set out. One was Williams Street, the other Lovell's Lane. It appears that appellants owned property at an intersection.

The ordinance provided that the resurfacing of side streets should be done at the cost of owners of abutting lots, to be apportioned according to the lineal frontage, and levied the amount as against each lot. Assessments were to become due at a stated time, and a lien was created against the properties involved. The assessment against appellants appears to have been $115.85. This ordinance, while loosely drawn under a confusing section of the statutes, KS sec 3706, conformed substantially to the statute. Eisenschmidt v. Ader, 185 Ky. 280, 215 S. W. 48, 52. In that case we wrote: "The Statute having empowered the trustees of towns of the sixth class to have done 'any work they deem necessary upon sidewalks, &c.,' they may proceed to have work done upon sidewalks, at the expense of the abutting property owner, in such manner as may appear to be proper, in their discretion, and under such reasonable regulations as they may adopt by ordinance or resolution, provided the manner and details of such requirements are not arbitrary nor oppressive to the citizen nor deny to him a fair opportunity to preserve his rights."

It was alleged that advertisement was duly made. In the absence of a claim or showing to the contrary it may be assumed that it was correct and in due form. It was also alleged that Johns had completed the contract and his work duly accepted. The acceptance of the work done under this section of the statute is conclusive that it conforms to the contract in absence of showing of fraud or mistake. Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609. While there was some charge of bad business practice by the trustees, and fraud on the part of one trustee, whatever evidence was taken on factual issues is not before us.

Appellants' first complaint is as above stated. The question comes up under the following circumstances: Appellants demurred to the petition; the court overruling with exceptions. Thereafter, by agreement of

parties, attested copies of the ordinances were filed, to be considered in all improvement cases. On the same day defendants filed a copious answer in which they denied substantially all the allegations of the petition, affirmatively pleading, (1) that the ordinances were not properly passed; that the chairman of the board of trustees had not executed a contract on behalf of the town, and that before the work was completed or accepted the property owners had filed objections to the improvements. They also plead fraud and collusion, and performance of inferior work, setting the matters out in detail. Issues were raised by replies and rejoinders, with demurrers to answers overruled.

Counsel for appellants aim their objections toward ordinance No. 179, complaining that it did not name the side streets, nor order any improvement on any of the side streets. This is true, but ordinance No. 180, passed the following week, meets the requirements of the statute, supra. But appellants say that it was invalid because while naming the streets it does not appear whether they are "side streets or not." Surely the owners knew whether Williams and Lovell Lane were side streets, and there is no allegations that they were not, nor that the work done under the contract was not done on the streets named. Appellants insist that the ordinances which were considered by the court in his ruling on demurrer contradicted the petition's allegations, and call into play the well known rule holding that where exhibits are filed with a petition, and constitute the basis of the action, the exhibit is controlling to the extent of contradictions. Goodloe v. Anderson, 275 Ky. 460, 121 S. W. 2d 958. Also the rule that under circumstances a demurrer to an answer may be put to use in purging prior pleadings. Cleveland Wrecking Co. v. Aetna Oil Co., 287 Ky. 542, 154 S. W. 2d 31, 137 A. L. R. 352; Maryland Casualty Co. v. Newport Culvert Co., 277 Ky. 320, 126 S. W. 2d 468. Admitting the verity of these rules, we do not find it necessary to apply them here. This because after consideration of the involved documents we are of the opinion that there was no such contradiction of the pleading by the exhibit as would justify us in holding that the court should have sustained demurrer to the petition.

It is next objected that the court erroneously struck a transcript of evidence from the files. The only reference

to the alleged error is embraced in appellants' brief, aside from the record showing that on the day of entry of judgment appellee moved to strike the bill of evidence "heretofore" filed in the clerk's office because no extension of time for filing had been asked or ordered. On this motion the court struck the transcript, over objection. This is all the record shows, and briefs do not give us satisfactory showing when or reasons why, the transcript was filed or stricken. But even if here our consideration of questions presented could be in nowise influenced by the evidence. It is possible that the court erred in the striking, but if appellants conceived that the transcript was necessary on appeal, they should have moved for its incorporation for the purpose of the appeal. Another way open to them, if their schedule was broad enough to include it, and it appears that it was, is by resort to the provisions of sections 737 and 742, Civil Code of Practice, and a showing that it was erroneously omitted.

The next point is that Hon. Clay Kauffman was not a special judge on June 8, 1942, when a nunc pro tunc order was entered. The suit was filed in December 1941. The regular judge disqualified himself. Kauffman was legally appointed on January 29, 1942, to try these improvement cases to "final determination." He sat and heard preliminary motions, and on April 28, 1942, adjudged the town entitled to the relief sought, and declared liens on the properties, as described in the petition. The chancellor, recognizing that time would be required to prepare the several judgments in full, by order gave until the following day for the purpose, this without objection. On the following day the court directed judgments and after reiterating the substance of the previous order adjudged liens and directed sales of the properties of defendants. All parties prayed and were granted appeals, without objection to the special judge presiding at that time.

On June 6th appellee notified all defendants (per attorney) that on June 8th it would move for an order nunc pro tunc for the purpose of correcting irregularities, if any, in the judgment of April 29. Defendants filed written objections to the proposed entry of "any such order," setting up several grounds. One, after recital of everything that had transpired to that time, was, as shown only in brief, that the special judge had at one time set

the cases for final hearing on May 2, but "he came back to Mt. Vernon and scratched out May 2d, and changed it to April 29," and then signed his name at the end of 10 blank pages in the order book so as the clerk could enter above his name the several judgments. Pausing to comment on these charges, it may be pointed out that there is no showing in the record of the acts, and certainly no objection on the part of appellants; nor is it shown how, admitting the charge, the rights of appellants were prejudiced.

It is contended that just "before the blank sheets" in the order book, preceding the signature of the judge, there appeared these words: "It is now ordered that court do now adjourn as the special judge court in the Town of Mt. Vernon v. O'Mara et al cases." Admitting that such order was made, though not shown in the record, there is no showing of prejudice arising from the entry of the nunc pro tunc order.

The third objection is that the special judge was at the time of and before the entry of any of the judgments or orders in the consolidated cases, a member of the Kentucky Legislature. He was elected on February 28, 1942, to succeed a deceased member, and assumed office on March 2d of that year. The contention is that by accepting the legislative office he, by operation of law, vacated his office prior to trying the cases or entering the judgments, hence powerless to preside. It is noted that there was no sort of objection to his entering the judgments of April 28 and 29th.

On this point reliance is had on section 165 of the Constitution, and 61.080, KRS, which treat of incompatible offices, and section 61.090, KRS which provides that the acceptance of an incompatible office serves to vacate the former; section 61.080 is the construction placed on the Constitution by the Legislature which declares what offices are incompatible. It may be gathered from the laws mentioned that there existed no incompatibility in the offices in question. Section 61.080, KRS, is a combination of several sections of KS, 1936 edition, among them section 3746. We had occasion to construe this section in the light of section 165 of the Constitution in Polley v. Fortenberry, 268 Ky. 369, 105 S. W. 2d 143, and held that if the two offices are not incompatible under the statue or Constitution the question turns on whether the functions of the two offices are so incon-

sistent as to be contrary to public policy, Barkley v. Stockdell, et al., 252 Ky. 1, 66 S. W. 2d 43, and we concluded they were not. See on the point raised, Kerr v. Louisville, 271 Ky. 335, 111 S. W. 2d 1046; James v. Cammack, 139 Ky. 223, 129 S. W. 582; Coleman v. Hurst, 226 Ky. 501, 11 S. W. 2d 133. Even though it may be admitted that the acceptance of the legislative office served to vacate the other, appellants would have no ground of complaint, since Kauffman was certainly qualified and eligible when he began the trial, and it is noted no objection came until after judgment against the parties declaring a lien "on each piece of property as set out in plaintiff's petition." We have held that the acts of a de facto judge who has assumed his duties according to provisions of law are binding on the public and third parties. Feck v. Commonwealth, 264 Ky. 556, 95 S. W. 2d 25, citing Nagel v. Bosworth, 148 Ky. 807, 147 S. W. 940, and other applicable cases.

In conclusion we may say that we fail to find in the record just what corrections, if any, were made in the April 29th judgment, save and except the signature of the special judge at the end of the judgment above the former signature. Appellants have wholly failed to direct our attention to alteration or correction of any supposed irregularity. If this was the only correction appellants were not prejudiced by that signing of the judgments, which could have been legally done by the regular judge in term time or in vacation upon proper notice. Lee v. Lee, 226 Ky. 776, 11 S. W. 2d 956; Gorman v. Lusk, 280 Ky. 692, 134 S. W. 2d 598, the latter case being conclusive of the right to enter the nunc pro tunc order, there being no contention that there was not satisfactory showing by written memorandum to authorize entry.

The objection that the nunc pro tunc order was entered out of regular term time, or at a time when there was no called special session, is so completely answered by reference to Wright v. Owens, 275 Ky. 692, 122 S. W. 2d 498; Gross' Adm'x v. Couch, 292 Ky. 304, 166 S. W. 2d 879; Bowling v. Evans, 266 Ky. 242, 98 S. W. 2d 916; City of Owensboro v. Nolan, 242 Ky. 342, 46 S. W. 2d 490, that discussion becomes unnecessary. On the whole case we fail to find any error committed by the court which would authorize us to reverse the judgment.

Judgment affirmed.

The whole Court sitting.